IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL MULGREW,<br>        Plaintiff,<br><br>    v.<br><br>PRINCE WILLIAM COUNTY SCHOOL BOARD,<br>        Defendant. | Case No.: 1:22-cv-01311 (MSN/JFA) |

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendant Prince William County School Board's Motion to Dismiss the Amended Complaint. (Dkt. No. 12). Upon consideration of the motion, the opposition, and the reply thereto, the Court grants the motion and dismisses the Amended Complaint with prejudice.

**I.    BACKGROUND**

Plaintiff Michael Mulgrew filed a complaint on November 17, 2022 (Dkt. No. 1) and an amended complaint on May 5, 2023 (Dkt. No. 10) ("Am. Compl."). In the Amended Complaint, Plaintiff brings two causes of action—retaliation under Title VII and a breach of his employment contract—against Defendant Prince William County School Board (the "School Board"). *Id.* ¶¶ 79–111.

In the Amended Complaint, Plaintiff asserts various grievances he has had with the School Board, its members, and employees from 2005 until his retirement in 2022. Plaintiff, a Puerto Rican man, alleges that in 2005, after he was hired as Associate Superintendent for High Schools of Prince William County, he became aware of a letter by Lillie Jessie criticizing the decision to

1

hire him. Am. Compl. ¶ 11. Jessie is a Black woman who was then an elementary school principal and who currently serves as a School Board member. *See id.* ¶¶ 9, 13. The letter allegedly "raised [Plaintiff's] ethnicity, specifically the fact that his mother was born in Puerto Rico." *Id.* ¶ 11. Plaintiff alleges that in 2013 Jessie made statements that were "meant to intimidate" him, and which he understood to mean that she was "looking for anything she could find to diminish [him] professionally." *Id.* ¶ 13. In December 2015, Plaintiff alleges that School Board members, including Jessie, met at a party where they "conspir[ed] to terminate or reassign certain employees," including Plaintiff." *Id.* ¶ 16.

In July 2019, when a new Activities Director was hired at Woodbridge High School, Jessie "blamed [Plaintiff] for not selecting the 'African American candidate'" for the position. *Id.* ¶ 20. Plaintiff alleges that "friction" subsequently developed between the Athletic Director and the football coaching staff, culminating in the resignation of one of those staff members. *Id.* ¶¶ 21–24. Jessie allegedly held Plaintiff "responsible for the negative perception of Woodbridge" High School and that "the African American candidate . . . 'never stood a chance.'" *Id.* ¶¶ 27, 33.

In November 2019, Plaintiff filed an internal complaint against Jessie in connection with her behavior towards Plaintiff—"accusing him of being responsible for the issues and the parental concerns related to the athletic program" at Woodbridge High School—during a School Board meeting on November 19, 2019. *Id.* ¶¶ 27, 35–36. Plaintiff alleges that in his 2019 complaint against Jessie, he complained about her behavior "as a violation of the anti-bullying statute," "cit[ing] and provid[ing] examples of . . . Jessie's racial animus toward [Plaintiff]." *Id.* ¶ 36. Mulgrew characterizes his complaint as "detail[ing] actions of Ms. Jessie over a 15-year period that revolved around her attempts to protect individuals that were of a different race than [Plaintiff] and clearly implied that [Plaintiff] was biased against individuals because of his Puerto Rican

2

heritage." *Id.* ¶ 37. The 2019 complaint was formally investigated by an outside law firm, which determined that Jessie's behavior was "unprofessional and in violation of various sections of the School Board's Code of Conduct and Code of Ethics" but "did not rise to the level of bullying under the Code of Virginia." *Id*. ¶¶ 38, 41.

In the spring of 2021, Plaintiff alleges that he received various calls from an Associate Superintendent for Human Resources regarding accusations of "impropriety." *Id.* ¶¶ 45–46.[1] He alleges that both instances were ultimately resolved when Plaintiff provided additional information. *Id.* In June 2021, Plaintiff was allegedly accused of interfering with the selection process for a coaching position at C.D. Hylton High School and preventing an applicant from being hired. *Id.* ¶¶ 47–49. Plaintiff alleges that the School Board found no evidence to substantiate the accusations. *Id.* ¶ 50.

In August 2021, Plaintiff was advised that he was being placed on paid administrative leave related to a human resources investigation that had begun in March 2021 involving a teacher who failed to grade and post student assignments. *Id.* ¶¶ 44; 56–59. Plaintiff further alleges that, while on paid administrative leave, he learned of another investigation involving his supervision of Freedom High School, where a football coach had been using the athletic field for events run by his personal business. *Id.* ¶¶ 62–66, 76. Plaintiff alleges that all of the individuals "involved with the Freedom football situation are African American or white and were not held to the standards required by [the School Board] policy or by the law." *Id.* ¶ 67.

Plaintiff alleges that in January 2022, he remained on paid administrate leave and it became clear that "he would never be permitted to return to active employment" and "understood the

---

[1] These incidents involve (1) not telling the Associate in Human Resources that an employee wanted to leave the central office and return to working in high schools and (2) directing principals to falsify payroll streets. Am. Compl. ¶¶ 45, 46.

actions of [the School Board] to be a concerted effort to force [Plaintiff] from his position." *Id.* ¶ 69. Plaintiff alleges that if he were terminated, he would potentially lose certain retirement benefits. *Id.* ¶ 70. Believing that the "intent [of the Freedom football situation] was to deflect the blame for the behavior of the African American employees onto [Plaintiff]," Plaintiff "retired in February 2022." *Id.* ¶¶ 76, 77.

## II.     LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff must make more than bald accusations or mere speculation; "naked assertions devoid of further factual enhancement" and "a formulaic recitation of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; see *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

## III.    ANALYSIS

### A.     RETALIATION

To sustain a claim for retaliation in violation of Title VII, Plaintiff must plead facts from which the Court can plausibly infer that (1) he engaged in a protected activity; (2) his employer then took an adverse employment action against him; and (3) the adverse action was causally

4

connected to the protected activity. *Weth v. O'Leary*, 796 F. Supp. 2d 766, 780–81 (E.D. Va. 2011). A plaintiff is not required to establish a prima facie case to survive a motion to dismiss, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15, (2002), but the factual allegations must "be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. Accordingly, at the motion to dismiss stage, "the Court looks to the elements of a prima facie case but does not require proof of the elements, only plausibility." *Robinson v. Loudon Cty. Pub. Sch.*, No. 1:16-cv-1604, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017).

Under Count I, Plaintiff claims that he was subjected to retaliatory conduct by the School Board after filing an internal complaint against Jessie in 2019. Specifically, he alleges that this retaliatory conduct included (1) defamation, harassment, and other improper conduct by School Board employees; (2) having multiple internal investigations initiated against him; and (3) serving a "long term suspension" that ultimately led him into a "forced retirement." Am. Compl. ¶ 84. The Court finds that Count I must be dismissed because Plaintiff fails to allege that the School Board took an adverse employment action against him and fails to allege that there was a causal link between the 2019 internal complaint and any adverse action.

### 1. Adverse Employment Action

First, Plaintiff fails to allege the School Board took an adverse employment action against him. An adverse action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).

With respect to the defamation, harassment and other conduct by School Board employees, Plaintiff must plead that he was subjected to severe or pervasive conduct in order to state a claim for relief for retaliatory harassment. *See Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 839 (E.D. Va. 2016). "Because Title VII does not protect against minor workplace harms, questions of

'severity' should be considered in light of the Supreme Court's standard for retaliation: that a 'reasonable employee would have found the challenged action materially adverse' such that a reasonable employee would be dissuaded from engaging in protected activity." *Id.* (citation omitted). Although it is unclear precisely what conduct following the 2019 internal complaint forms the basis of any allegation of "defamation" or "harassment," the Court finds that Plaintiff has failed to sufficiently allege retaliatory harassment. Mere "[r]ude treatment by coworkers" and "personality conflict[s]" are not severe nor pervasive enough to be actionable under Title VII. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).

Likewise, the internal investigations into Plaintiff after he filed the 2019 internal complaint do not sufficiently allege adverse actions. The initiation of an internal investigation by an employer is not in itself an adverse employment action. *Satterfield v. City of Chesapeake*, 2017 WL 11449568, at *9 (E.D. Va. Aug. 31, 2017). Particularly where disciplinary investigations are grounded in "articulable facts justifying such an investigation," *Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 436-37 (D. Md. 2012), the "mere decision to initiate an investigation is not an adverse employment action." *Dawson v. Rumsfeld*, No. 1:05-cv-1270, 2006 WL 325867, at *6 (E.D. Va. Feb. 8, 2006). Here, Plaintiff does not allege that the School Board had no articulable basis to conduct the investigation that ultimately resulted in him being placed on administrative leave. *See Handley v. Baltimore Police Dept.*, No. DLB-20-1054, 2022 WL 3700871, at *8 (D. Md. Aug. 26, 2022) ("Essentially, an investigation that does not result in some adverse effect on the terms and conditions of employment is one of the 'many interlocutory or mediate decisions having no immediate effect on employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII.'") (quoting *Page v. Bolger*, 645 F. 2d 227, 233 (4th Cir. 1981)). The factual allegations regarding the internal investigations initiated after the 2019 complaint are

therefore insufficient to allege an adverse employment action for the purposes of a Title VII retaliation claim.

Plaintiff also fails to allege a cognizable adverse action with respect to his paid administrative leave and retirement. Placing Plaintiff on paid administrative leave pending investigation into his conduct under these particular circumstances does not constitute an adverse employment action. *See Sturdivent v. Geren*, 2009 WL 4030738, at *6 (E.D. Va. Nov. 19, 2009) ("The courts have held that placing an individual on paid administrative leave does not constitute an adverse employment action in the discrimination context or in the retaliation context.") (collecting cases); *Lacasse v. Didlake, Inc.*, 194 F. Supp. 3d 494, 502 (E.D. Va. 2016) ("Paid leave is not an adverse employment action.").

The Court also finds that the Amended Complaint fails to sufficiently allege an adverse action with respect to Plaintiff's retirement. Where a plaintiff voluntarily resigns, there is no adverse action. *Ferguson v. Holder*, 2015 WL 11117148, at *5 (E.D. Va. Feb. 9, 2015). To the extent that Plaintiff intends to allege a constructive discharge claim, he has failed to plead the elements of such a theory. An employee is constructively discharged "if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995) (cleaned up). A plaintiff alleging constructive discharge must allege facts regarding the "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Id.* at 354. "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Ratcliff v. Spencer*, No. 1:18-cv-757, 2019 WL 2375131, at *5 (E.D. Va. June 4, 2019) (citation omitted).

Here, Plaintiff has pled no facts showing that the School Board took any deliberate actions to induce him to resign. Nor does Plaintiff sufficiently allege that his work conditions were objectively intolerable. Regarding intolerability, a plaintiff must allege facts demonstrating that he resigned because the work conditions were such that a reasonable person in plaintiff's position would have felt compelled to resign. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (citations and quotation marks omitted). Here, Plaintiff was placed on administrative leave and was therefore *removed* from work conditions he may have perceived to be intolerable. His subjective fear of being terminated, which he alleges led him to resign, does not amount to a constructive discharge. *E.g., Robinson v. BGM Am., Inc.*, 964 F. Supp. 2d 552, 578 (D.S.C. 2013) ("[A]lthough [plaintiff] may have feared termination after receiving information about his attendance from Defendant's Human Resources Department, such subjective fear does not constitute an intolerable working condition [for purposes of a constructive discharge claim].").

The Court therefore dismisses Count I for failure to allege facts sufficient to allege an adverse employment action.

### 2. Causal Link

Even if Plaintiff had alleged a cognizable adverse employment action, the Court finds that the retaliation claim must nevertheless be dismissed because Plaintiff has failed to sufficiently allege a causal link between the 2019 internal complaint and any alleged adverse action. To establish a causal connection, a plaintiff must show that he was subjected to an adverse employment action "*because* [he] engaged in a protected activity." *Holland v. Washington*

*Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). The Court cannot plausibly infer from the factual assertions in the Amended Complaint that any of the conduct he alleged was taken in retaliation for filing the internal complaint in 2019 was causally linked to that complaint. Rather, Plaintiff alleges that he was placed on paid administrative leave due to an investigation related to claims involving a teacher who had failed to grade and post student assignments. Am. Compl. ¶¶ 44, 56–58.

Moreover, where there is knowledge of protected activity, an inference of causation typically arises when the temporal proximity between the protected activity and an adverse employment action is "very close." *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (three months lapse between protected activity and adverse action insufficient). Here, Plaintiff lodged an internal complaint in November 2019 against Jessie; the first of the allegedly retaliatory actions taken by his employer occurred in the spring of 2021—nearly a year and a half after the 2019 complaint. *See* Am. Compl. ¶¶ 45–46. That time period of one-and-a-half years is much too tenuous to support any inference of a causal link here.[2] Accordingly, the Court dismisses Count I of the Amended Complaint.[3]

---

[2] Plaintiff's passing reference to the School Board Chair petitioning the Superintendent to fire Plaintiff in "the Fall of 2019" does not change the analysis. Am. Compl. ¶ 42. Plaintiff does not specify the date any this occurred, including whether this occurred after the November 2019 internal complaint by Plaintiff. Nor does a member of the School Board "petition[ing]" the Superintendent for someone's termination constitute an adverse employment action, particularly where Plaintiff also alleges that the relevant decisionmakers (or at least their attorneys) were told they "were not allowed to have such conversations demanding a staff member be fired." *Id.*

[3] Plaintiff states in his Opposition that the retaliation claim is based on a "continuous course of retaliation springing from the 2019 complaint" and that the investigation prompted by the complaint was not completed until June 2020. (Dkt. No. 15 at 4-5). Plaintiff has not alleged this theory of retaliatory conduct in his complaint. And even if he had alleged any such continuing course of conduct, Plaintiff would still fail to adequately allege any causal link. Even if the Court were to use the *completion* of the investigation (rather than the lodging of a complaint) as a starting point for the retaliatory conduct, that would still mean the earliest alleged retaliatory act occurred in spring 2021—this one year gap is still to attenuated to infer a causal link.

B.   **BREACH OF CONTRACT**

Count II of the Amended Complaint alleges that the School Board breached Plaintiff's employment contract because the School Board failed to abide by certain of its policies and regulations. Importantly, however, the relevant provision of the employment agreement cited by Plaintiff, *see* Am. Compl. ¶ 95 (citing paragraph 4 of the contract), outlines the duties *of the employee*—not the employer. Specifically it states that "[t]he ***employee shall comply*** with all school laws, State Board of Education regulations, and all policies and regulations of the School Board now existing or enacted during the term of the contract. . . . Failure to comply with such laws, policies or regulations shall constitute sufficient grounds for termination of the contract by the School Board. All policies and regulations of the School Board are incorporated herein, and any violation thereof shall be deemed a material breach of this contract." (Dkt. No. 10-2 ¶ 4) (emphasis added). Plaintiff states that he was "expected to abide by, and conduct himself in comportment with" the applicable policies and regulations, but that the "contract also afforded Mr. Mulgrew the same protections and benefits set forth in those" policies and regulations." *Id.* But the plain terms of the employment contract make clear that refraining from violating the relevant policies and regulations are legal obligations that are imposed upon the employee who has entered into the contract.[4] Indeed, each of the provisions within the section under which paragraph 4 is located details the duties and obligations of the employee, and does not contemplate any obligations by the employer. As with Count I, the Court finds that further amendment of this substantively meritless claim would be futile, and dismisses Count II with prejudice.

---

[4] This is not to say that policies or regulations that govern the School Board's conduct may be actionable in other circumstances. But here, where the express language of the provision of the employment contract at issue imposes specific obligations against only the employee with respect to adherence to policies and regulations, Plaintiff cannot maintain a *breach of contract* cause of action where the underlying breach is an *employer's* alleged violation of policies and regulations.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED.**

The Clerk is directed to close this civil action.

                                                    /s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
November 2, 2023